UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

THOMAS ROBINSON,

                Plaintiff,        Civil Action No. 19-10877
                                     Honorable Mark A. Goldsmith
v.                                   Magistrate Judge David R. Grand

MRS. TYLER, et al.,

                Defendants.
_____/

## REPORT AND RECOMMENDATION TO DENY PLAINTIFF'S EMERGENCY *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER AND PERMANENT INJUNCTION AGAINST DEFENDANT TIMOTHY ROONEY [10]

### I.    RECOMMENDATION

This case has been referred to the undersigned for management, hearing, and determination of all pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A), and for any reports and recommendations on dispositive matters that may be necessary pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #10). *Pro se* Plaintiff Thomas Robinson ("Robinson") has been granted leave to proceed *in forma pauperis*. (Doc. #5). For the reasons discussed below, **IT IS RECOMMENDED** that Robinson's Emergency *Ex Parte* Motion for Temporary Restraining Order ("TRO") and Permanent[1] Injunction against Defendant Timothy Rooney ("Rooney") **(Doc. #10)** be **DENIED**.

---

[1] As Defendants in this action have not yet been served with process, the Court will construe Robinson's motion as seeking a preliminary injunction. "The standard for a permanent injunction is essentially the same as for a preliminary injunction except that the plaintiff must show actual success on the merits rather than a likelihood of success." *Gas Natural Inc. v. Osborne,* 624 Fed. Appx. 944, 948 (6th Cir. 2015). Here, Robinson has not shown any likelihood of success.

## II. REPORT

### A. Factual and Procedural Background

#### i. *Criminal Case*

Robinson, aside from being the plaintiff in the present case, is a defendant in a criminal case pending in this Court before the Honorable Laurie J. Michelson. *See* Case No. 18-CR-20150-1 (the "Criminal Case"). He currently is released on bond, and is being supervised by Pretrial Services Officer Rooney. As explained in more detail below, Robinson's instant civil complaint alleges violations of his constitutional rights relating to circumstances that ultimately led to the modification of his bond conditions. (Doc. #9). A brief discussion of Robinson's bond conditions, therefore, will provide some context.

The initial order setting conditions of release directed, in part, that Robinson participate in a location monitoring program requiring a GPS tether and restricting him to his mother's residence every day with a curfew as directed by Pretrial Services. (Criminal Case Doc. #10). These conditions were later modified based on the Government's allegations that Robinson was a sex trafficker and a drug dealer and that while on bond he went to the New Paths Residential Treatment Facility ("New Paths") to recruit women to engage in prostitution. (*Id.*, Doc. #20 at 2). By order dated April 25, 2018, the Honorable Linda V. Parker[2] modified Robinson's bond conditions to prohibit him from entering or loitering around New Paths. (*Id.*, Doc. #27).

On March 22, 2019, Rooney, as Robinson's Pretrial Services Officer, submitted a Petition for Action on Condition of Release requesting a bond hearing. (*Id.*, Doc. #59). A bond hearing

---

[2] Judge Parker initially presided over this case until it was administratively reassigned to Judge Michelson.

was held on March 27, 2019. Robinson's bond was modified to include these additional release conditions:

1) Shall submit to location monitoring with home detention (You are restricted to your residence at all times except for employment; education; religious services; medical appointments; substance abuse counseling; mental health treatment; attorney visits; Court appearances; Court ordered obligations; or other activities pre-approved by Pretrial Services). Must give 24-hours notice to Pretrial Services for all authorized activities and 48-hours for all other requests.

2) Zero tolerance regarding following all rules and directives of your Pretrial Services Officer, including keeping your GPS tracker charged at all times as instructed by Pretrial Services, complying with all other directives regarding location monitoring and all previously imposed conditions of release.

(*Id.*, Doc. #60).

### ii. Civil Complaint

On March 25, 2019, Robinson filed his complaint in this civil action under 42 U.S.C. § 1983 alleging numerous violations of his constitutional rights by several employees of New Paths, certain employees of McClaren Hospital, and his Federal Pretrial Services Officer Rooney. Robinson's claims are somewhat unclear, but they seem to relate to the events that resulted in the additional bond restrictions imposed against him in his Criminal Case.[3] In short, Robinson claims that while he was on bond, his fiancée was receiving treatment at McClaren Hospital and New Paths, and that FBI agents falsely advised staff of those two entities that Robinson may be a danger

---

[3] As noted, Robinson is a federal pretrial detainee being supervised by a federal Pretrial Services Officer. 42 U.S.C. § 1983 provides a cause of action for constitutional deprivations arising out of actions taken under color of state—not federal—law. *Haines v. Federal Motor Carrier Safety Ass'n.,* 2015 WL 1912338, at *4 (E.D. Mich. April 27, 2015). Rather, *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, (1971)* provides federal inmates and detainees with a cause of action analogous to *§ 1983*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 675–76 (2009) (characterizing *Bivens* as the "federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983."). Accordingly, the Court will construe Robinson's complaint under *Bivens*.

3

to the woman.  (Doc. #1 at 4-5).  Robinson also claims that his Pretrial Services Officer, Rooney, "arbitrarily" imposed a "total house arrest for approximate[ly] 2½ days."  (*Id.* at 10).

As discussed below, Robinson's emergency motion is directed specifically to Rooney. Thus, the Court will limit its discussion to his allegations involving Rooney.  Robinson has set forth these allegations in his complaint under the headings captioned as "Ground Three," "Facts in Support of Ground Three," and "Defendant Rooney's Liability."  (*Id.* at 2, 9, 12).  Robinson alleges that Rooney retaliated against him for filing a "perpetuation motion" on January 18, 2019, in his criminal case. (Doc. #1, at 12-13).  Further, Robinson asserts that Rooney retaliated against him over issues involving Robinson's fiancée. (*Id.*).  Robinson cites two distinct actions taken by Rooney between March 15 and March 18, 2019, that he believes demonstrate this alleged retaliation.  First, in response to a monitoring device malfunction resulting from a brief power outage, Robinson states that Rooney took the "extraordinary" step of confining Robinson to "total house arrest" for approximately 2½ days.  (*Id*. at 10).  Robinson explains that this power outage occurred between approximately 7:00 p.m. and 7:15 p.m. on Friday March 15, and Rooney ordered him not to leave his mother's house until 2:00 p.m. on Monday March 18.  (*Id*. at 9, 12).  Second, Robinson asserts that, on March 18, Rooney informed Robinson that he was prohibited from sleeping in the basement of his mother's home.  (*Id*. at 12).  Robinson asserts that Rooney issued this additional restriction under the pretext of a problem with the monitoring device and even though Robinson had been sleeping in the basement without incident since February 21, 2018.  (*Id*. at 10, 12).  Robinson contends that Rooney's alleged actions violate his First, Fourth, Fifth, and Fourteenth Amendment rights to association, intimacy, freedom of movement, privacy and due process of law.  (*Id*. at 2, 13).

> ii. *Emergency Ex Parte Motion for Temporary Restraining Order and Preliminary Injunction against Defendant Timothy Rooney*

Robinson's Emergency *Ex Parte* Motion for TRO and Permanent Injunction, filed on May 6, 2019, is directed solely to Rooney although it also makes brief reference to an "unknown co-worker." (Doc. #10 at 2, 13).[4] Robinson's stated purpose in filing this motion is to obtain an order directing that Rooney "cease harassing and retaliatory denial to access library and court" so that Robinson can pursue this civil action and "cease and desist clandestine retaliatory tactics aimed at deterring [him] from litigating [his] claim of First Amendment rights violation." (*Id*. at 2). Robinson further states that he seeks an order directing that Rooney stop "his repeated attempts to interfere in" Robinson's relationship with his fiancée "in violation of free exercise under the First Amendment clause." (*Id.*)

Robinson's motion reiterates some of the complaint's allegations and provides some additional detail regarding the status of his bond conditions and certain events that have occurred after the complaint was filed. Specifically, Robinson explains that he appeared in court on March 27, 2019, accompanied by counsel, for a hearing on the petition for action on the conditions of pretrial release filed by Rooney. (*Id*. at 6). Robinson alleges that Rooney made false and misleading statements to the court in connection with the hearing, which further violated Robinson's First Amendment and due process rights. (*Id*. at 6-7). In particular, Robinson asserts that Rooney falsely represented that Robinson had been discharged from treatment by his therapist because he was not capable of rehabilitation, reiterated old and false allegations that Robinson had

---

[4] Robinson's complaint does not make clear the capacity in which he is suing any of the defendants, but his instant motion is addressed to "Timothy Rooney, individual and in his official." Thus, for purposes of considering the current motion, the Court will construe Robinson's complaint as proceeding against Rooney in both his personal and official capacities.

5

recruited women from New Paths for purposes of solicitation, and incorrectly stated that Robinson had been unable to be tracked 22 times. (*Id*. at 7-8).

### B. Applicable Legal Standards

"Temporary restraining orders and preliminary injunctions are extraordinary remedies designed to preserve the relative positions of the parties until further proceedings on the merits can be held." *Koetje v. Norton*, 2013 WL 8475802, at *2 (E.D. Mich. Oct. 23, 2013). Whether to grant such relief is a matter within the discretion of the district court. *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 540 (6th Cir. 2007). The same factors are considered in determining whether to grant a request for a TRO or a preliminary injunction. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008). Those factors are: (1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant will suffer irreparable harm without the injunction; (3) whether issuance of the injunction will cause substantial harm to others; and (4) whether the public interest is served by issuance of the injunction. *Id.* (citing *Ne. Ohio Coal. for the Homeless v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)). Moreover, a TRO is an extraordinary remedy, "which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002).

In addition, Fed. R. Civ. P. 65(b)(1) states that a TRO may be issued without written or oral notice to the adverse party[5] or its attorney only if:

> (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

---

[5] On May 14, 2019, Robinson filed a Certificate of Service indicating that he had served a copy of his instant motion on Rooney via U.S. Mail. (Doc. #11). Even if true, Rooney has not been served with process, and thus, Robinson's characterization of his motion as being filed "*ex parte*" seems accurate. Regardless, Robinson has not shown his entitlement to any of the relief he requests.

    (B) the movant's attorney certifies to the court in writing any efforts made
    to give notice and the reasons why it should not be required.

  **C.**  **Analysis**

Robinson has not met his burden of demonstrating that he is entitled to a TRO directed to Rooney. Robinson's first stated purpose of obtaining an order directing Rooney to allow him access to the library is tantamount to asking this Court to modify the bond conditions he is under in his Criminal Case. Such a request lacks merit. The purpose of a TRO "is simply to preserve the status quo," *United States v. Edward Rose & Sons*, 384 F.3d 258, 261 (6th Cir. 2004), and here the "status quo" is that Robinson has been released on a bond with the conditions currently in place. To grant Robinson the relief he seeks would not maintain the status quo, but alter it.[6] Further, Robinson's contention that Rooney has interfered with his ability to pursue this case is belied by Robinson's current filing, and Robinson fails to explain what information he can obtain only at a library.

Robinson's second stated purpose in seeking a TRO relates to Rooney's alleged interference with Robinson's relationship with Robinson's fiancée. This stated purpose appears to relate more directly to the allegations of the complaint directed to Rooney. Thus, the Court will examine the factors applicable to a TRO request as they relate to this basis for Robinson's motion.

With respect to the first factor, Robinson has not established a likelihood of success on the merits of his claims against Rooney. Courts have long held that "[a]lthough no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000). Robinson does not meaningfully address this issue in his motion. His entire discussion is set forth in one sentence on

---

[6] To the extent Robinson believes his bond conditions are inappropriate, his recourse is to file a motion in his Criminal Case to alter those conditions.

7

page 4 of his motion, stating that he has a "[s]trong probability of succeeding on the merits based on abundant legal decisions and analysis by Federal Circuits." (Doc. #10 at 4). He does not identify the elements of any of his claims nor does he cite to any of the "abundant legal decisions" that he asserts demonstrate his strong probability of success. Clearly, then, Robinson has not met his burden of establishing a likelihood of success on the merits.

Indeed, it is not even clear that Robinson has any cognizable claim whatsoever against Rooney. Robinson's primary claim against Rooney appears to be one for retaliation based, at least in part, on Robinson's exercise of his purported First Amendment rights. However, it is at best unclear as to whether this claim would be cognizable under *Bivens*. As the Court explained in *Howard v. Lackey*, No. CV 7:16-129-KKC, 2018 WL 1157547, at *2–4 (E.D. Ky. Mar. 5, 2018):

> While under *Bivens* an individual may "recover money damages for any injuries ... suffered as a result of [federal] agents' violation of" his constitutional rights, the Supreme Court has repeatedly indicated that a First Amendment claim is not cognizable under *Bivens*. *See Reichle v. Howards*, 132 S. Ct. 2088, 2093 n.4 (2012) ("We have never held that *Bivens* extends to First Amendment claims."); *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) ("For while we have allowed a *Bivens* action to redress a violation of the equal protection component of the Due Process Clause of the Fifth Amendment ..., we have not found an implied damages remedy under the Free Exercise Clause. Indeed, we have declined to extend *Bivens* to a claim sounding in the First Amendment.") (citations omitted); *Bush v. Lucas*, 462 U.S. 367, 387-89 (1983) (First Amendment retaliation claim was not cognizable under *Bivens*).

*See also Meeks v. Larsen*, 999 F. Supp. 2d 968, 981 (E.D. Mich. 2014), *aff'd*, 611 F. App'x 277 (6th Cir. 2015) (holding that "*Bivens* does not apply to First Amendment claims.").

Construing Robinson's allegations against Rooney broadly, he also alleges generally that Rooney's actions violated his due process and Fourth Amendment rights. These claims also are not among the claims specifically recognized by *Bivens*. "The three contexts in which the Supreme Court has allowed a *Bivens* claim to proceed are Fourth Amendment searches, Fifth Amendment gender-discrimination claims, and Eighth Amendment failure to provide medical care claims."

8

*Elhady v. Pew*, --F.3d--, No. 17-CV-12969, 2019 WL 1002414, at *7 (E.D. Mich. Mar. 1, 2019), citing *Ziglar v. Abbasi*, --U.S.--, 137 S.Ct. 1843, 1854-1855 (2017). Moreover, Robinson's characterization of his Fourth Amendment claim against Rooney in terms of an "unlawful seizure" or a restriction on his "right to freedom of movement" makes little sense in the bond context, where the very premise is to limit the pretrial defendant's freedom of movement to reasonably assure that he will not pose a danger to the community or an unreasonable risk of non-appearance. (Doc.#1 at 3). *See* 18 U.S.C. § 3142(c)(1)(B). The alternative, of course, is to detain the defendant pending trial, in which case he would be held in a jail with no outside freedoms whatsoever. Robinson's description of Rooney's alleged violations of his Fifth Amendment rights is even less well-articulated and appears to relate solely to the alleged denial of due process in connection with the bond conditions. (Doc. #1 at 2). Again, any challenge to the bond conditions should be addressed, in the first instance, to the judge presiding over Robinson's Criminal Case. Moreover, any analysis of Robinson's claims against Rooney must be undertaken with the full understanding that, "expanding the *Bivens* remedy is now considered a 'disfavored' judicial activity." *Ziglar*, 137 S.Ct. at 1857.

Robinson also has not shown that he will suffer irreparable harm absent the requested relief. Robinson's discussion of irreparable harm is minimal and limited to his First Amendment claim. He cites *Elrod v. Burns*, 427 U.S. 347, 373 (1976), for the general idea that "[i]n First Amendment cases, irreparable harm is presumed." (Doc.#10, #12). While Robinson's statement of the law regarding a First Amendment claim may not be incorrect, it is incomplete. "When First Amendment freedoms are at risk, the irreparable harm factor 'merges' with the likelihood of success, such that if the plaintiff shows he is likely to succeed on the merits, he has simultaneously proven he will suffer an irreparable harm." *Monaghan v. Sebelius*, 931 F.Supp.2d 794, 808 (E.D.

9

Mich. 2013), citing *McNeilly v. Land,* 684 F.3d 611, 620–21 (6th Cir. 2012). However, when a plaintiff does not have a likelihood of success on the merits, a mere conclusory assertion that he will be irreparably harmed by the deprivation of his First Amendment rights also fails. *Id.* Because the Court already has determined that Robinson has not demonstrated a likelihood of his First Amendment claim's success on the merits, he has not demonstrated irreparable harm.

The final two factors also weigh in favor of denying Robinson's motion for a TRO or preliminary injunction. Robinson does not address the potential risk of substantial harm to Rooney or others if the Court were to grant his requested relief. It is not hard, however, for the Court to imagine the harm that would come if, on the basis of the current record in this civil case, it were to issue an order directing the conduct of a pretrial services officer in a criminal case pending before a different judge. On the issue of the public interest, Robinson states only that "[t]he granting of injunctive relief will not disserve the public interest" and that "retaliatory actions cause irreparable harm to the public interest in enforcing the law by deterring others from filing charges." (Doc.#10, 11, 12). The public, however, would not be served by an order calling into question the conduct of a pretrial services officer charged with supervising a criminal defendant released on bond, where a plaintiff has made such little effort to address the issue.

As the moving party, Robinson was required to address all four factors for injunctive relief "with some degree of clarity and thoroughness." *Beeler v. Deutsche Bank Nat'l Trust Co.*, No. 08-10634, 2008 WL 495482, at *2 (E.D. Mich. Feb. 21, 2008). Since Robinson failed to meet this "heavy burden," his motion for an *ex-parte* TRO or preliminary injunction should be denied. *Id.* (denying the plaintiff's TRO motion where she made allegations of irreparable harm but failed to address the other three factors because "[w]hile mindful of a petitioner's heavy burden under these circumstances, the Court is not persuaded that the facts – as presented – warrant [this]

10

extraordinary remedy").

### III. CONCLUSION

For the foregoing reasons, **IT IS RECOMMENDED** that Robinson's Emergency *Ex Parte* Motion for Temporary Restraining Order and Preliminary Injunction against Defendant Rooney and "unknown co-worker" **(Doc. #10)** be **DENIED**.

Dated: May 20, 2019  s/David R. Grand
Ann Arbor, Michigan  DAVID R. GRAND
United States Magistrate Judge

### **NOTICE TO THE PARTIES REGARDING OBJECTIONS**

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

11

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 20, 2019.

                                                    s/Eddrey O. Butts
                                                    EDDREY O. BUTTS
                                                    Case Manager